**Autumn ALLAN, Appellant,**

v.

**Ekaterina NERSESOVA and Aslan Koraev, Appellees.**

No. 05–08–00916–CV.

Court of Appeals of Texas, Dallas.

March 10, 2010.

Robert H. Renneker, Dallas, TX, for Appellant.

Brian A. Mottet, Cowles & Thompson, P.C., J. Robert Miller, Jr., Christopher Robert Hutson, Miller & Brown, L.L.P., Dallas, TX, for Appellee.

Before Justices FITZGERALD, LANG, and SMITH.[1]

## OPINION NUNC PRO TUNC

Opinion By Justice SMITH (Retired).

This case involves a dispute between two unit owners in a condominium project. Autumn Allan appeals the trial court's judgment that she recover damages of $640.65 from Ekaterina Nersesova and Aslan Koraev on her negligence claim and that she take nothing on her breach of contract claim. Allan brings four issues contending the trial court erred by (1) concluding she failed to prove the existence of a contract between her and Koraev, (2) failing to award her attorney's fees, (3) allowing appellees a settlement credit under chapter 33 of the Texas Civil Practice & Remedies Code, and (4) excluding her testimony of the diminution in value of her condominium unit. We reverse the trial court's judgment in part, affirm in part, and remand the cause for further proceedings.

## BACKGROUND

Allan and Koraev both owned units in the Boardwalk on the Parkway Condominiums. Allan's unit was directly beneath Koraev's. Allan resided in her unit, while Koraev leased his unit to tenants; Nersesova managed Koraev's rental unit. Between March 2005 and July 2007, Allan's unit suffered eight incidents of water and sewage incursion as a result of plumbing problems and misuse of appliances in Koraev's unit. Allan sued Koraev, Nersesova, the condominium's Owners' Association, its president, and its management company on a variety of causes of action, including negligence and breach of contract. Before trial, all the defendants except Koraev and Nersesova settled with Allan for $10,750. During the trial, the court excluded Allan's testimony about the loss in market value of her unit due to the water and sewage incursions.

The jury found for Allan on her claims for breach of contract against Koraev and for negligence against both appellees, and further found Allan suffered damages of $12,885.51.[2] The jury found Koraev and

1. The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.

2. The trial court's judgment stated the jury found Allan "sustained actual damages in the amount of $12,885.51." The jury's verdict showed the jury found damages of $6525 for cost of repair, $5615.51 for damage to personal property, and $745.80 for additional living expenses, which together total $12,886.31. Because we are remanding this case, the trial court may choose to correct or explain this mathematical disparity of 80

Nersesova were each thirty percent responsible for the damage and a third party, Koraev's tenant, was forty percent responsible. The jury also found Allan's reasonable and necessary attorney's fees were $31,000 through trial and additional amounts for appeals. Koraev moved for judgment notwithstanding the verdict, asserting Allan failed to prove as a matter of law the existence of a contract between her and Koraev. The trial court granted the motion, rendering a take-nothing judgment on Allan's claim for breach of contract and for attorney's fees. On the negligence claim, the trial court subtracted the amount of the settlement from the damages found by the jury and, applying the jury's finding of thirty-percent responsibility, rendered judgment that Koraev and Nersesova were each liable to Allan for $640.65.

## BREACH OF CONTRACT

In her first point of error, Allan contends the trial court erred by rendering judgment notwithstanding the verdict on her breach of contract claim.

In reviewing rulings on motions for directed verdict and judgment notwithstanding the verdict, appellate courts apply the no-evidence standard. *See City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex.2005); *Adams v. State Farm Mut. Auto. Ins. Co.,* 264 S.W.3d 424, 427 (Tex.App.-Dallas 2008, pet. denied). We review the evidence and must credit the favorable evidence if reasonable jurors could, and we must disregard the contrary evidence unless reasonable jurors could not. *Wilson,* 168 S.W.3d at 827. A challenge to the legal sufficiency of the evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla. *Kroger Tex. Ltd. P'ship v. Suberu,* 216 S.W.3d 788, 793 (Tex.2006). Evidence does not exceed a scintilla if it is so weak as to do no more than create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004).

Allan asserted that the Declaration, Bylaws, and Rules and Regulations for the condominium (collectively, the governing documents) formed a contract between each unit owner and the Owners' Association (the Association), and that she had authority to sue Koraev because the Declaration specifically provided her that authority. She asserted that the Declaration required Koraev to comply with the terms of the governing documents, and the Bylaws and Rules and Regulations made Koraev liable for any damage he caused to another unit.[3]

In his motion for judgment notwithstanding the verdict, Koraev asserted that

cents between the jury verdict and the actual damages stated in the trial court's judgment.

**3.** Paragraph 19 of the Declaration required each unit owner to "comply strictly" with the Declaration, Bylaws, and Rules and Regulations, and the failure to comply would be grounds for an action to recover damages "which shall be maintainable ... in a proper case, by an aggrieved Owner."

Article IX, section 1(a) of the Bylaws provided that the failure to comply with the terms of the Declaration, Bylaws, and Rules and Regulations "shall be grounds for relief which may include ... money damages ...., all of which relief may be sought ... if appropriate, by any aggrieved Unit Owner." Article IX, section 1(b), titled *"Additional Liability,"* stated, "Each Unit Owner shall be liable for the expense of all maintenance, repair or replacement with respect to a Unit other than his unit rendered necessary by his or her act, neglect or carelessness, or the act, neglect of carelessness of ... his or her ... tenants....." Paragraph 38 of the Rules and Regulations required a unit owner (which included the owner's tenants) to repair at his own expense any damage he caused to the condominium (which included the land and any buildings on it).

Allan could not enforce the covenants in the Declaration because she failed to prove the common-law requirements for a restrictive covenant to run with the land. In this argument, Koraev asserted there was no contract between himself and Allan and that Allan had no authority to bring suit on her own behalf for his breach of the governing documents.

### Existence of a Contract Between Koraev and the Association

■ Koraev asserted there was no evidence of a contract between himself and the Association to which Allan could be a beneficiary. Koraev argued Allan failed to present evidence proving the restrictive covenants in the governing documents ran with the land and, therefore, failed to prove they applied to Koraev. He also argued Allan failed to prove he was subject to any restrictive covenants in the governing documents because she did not prove by a valid instrument that Koraev owned the allegedly encumbered unit.

■ Under the common law, restrictions on the free use of land are not favored. *Wilmoth v. Wilcox,* 734 S.W.2d 656, 657 (Tex.1987); *Davis v. Huey,* 620 S.W.2d 561, 565–66 (Tex.1981). Koraev asserts that restrictive covenants must meet certain requirements to run with the land and, if all those requirements are not met, then subsequent purchasers are not subject to the restrictions. None of the cases Koraev cites for this position involved condominiums; instead, they involved residential and business subdivisions and other restrictions on the use of land. We have not been cited to any case where a condominium regime has been set aside for failing to meet the common-law requirements for a restrictive covenant to run with the land.

■ The concept of the condominium comes not from the common law but is a statutory creation. *Dutcher v. Owens,* 647 S.W.2d 948, 949 & n. 1 (Tex.1983) ("Condominium ownership is a tenure unknown at common law."). As the supreme court explained,

> In enacting the Texas Condominium Act, the Texas Legislature intended to create "a new method of property ownership." 1963 Tex. Gen. Laws, Ch. 191, § 26 at 512. A condominium is an estate in real property consisting of an undivided interest in a portion of a parcel of real property together with a separate fee simple interest in another portion of the same parcel. In essence, condominium ownership is the merger of two estates in land into one: the fee simple ownership of an apartment or unit in a condominium project and a tenancy in common with other co-owners in the common elements.

*Id.* at 949 (citations and footnote omitted). By accepting a deed to a condominium unit, the unit owner accepts the terms, conditions, and restrictions in the declaration. *Daly v. River Oaks Place Council of Co–Owners,* 59 S.W.3d 416, 418 (Tex.App.-Houston [1st Dist.] 2001, no pet.). Restrictions in a condominium declaration form a contract between the parties. *Aghili v. Banks,* 63 S.W.3d 812, 816 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). When the defendant admits owning a condominium unit, it is not necessary for the plaintiff to present the deed to establish the defendant's ownership of the unit and his being subject to the declaration. *Daly,* 59 S.W.3d at 418.

In this case, Koraev testified he owned the unit, and no evidence at trial controverted his ownership. He also testified he "[p]robably ... maybe" had seen the Declaration, that he had seen the Rules and Regulations, but that he "[p]robably" had not seen the Bylaws. He testified he knew the governing documents were binding on

him whether or not he had seen them. The Declaration provided that its terms apply to every person acquiring or owning an interest in the property. Paragraph 1 of the Declaration stated, "The Association does hereby publish and declare that the ... covenants ... limitations, and obligations contained herein shall be deemed to run with the land...."

We conclude this law and evidence demonstrated a binding contract existed between Koraev and the Association and removed Allan's burden to establish that the restrictive covenants of the governing documents ran with the land.

## Allan's Standing to Sue for Koraev's Breach of the Governing Documents

■ Having concluded a contract existed between Koraev and the Association, we next consider whether Allan could bring suit for breach of that contract. To have standing to bring a suit for breach of contract, the plaintiff must either be in privity of contract with the defendant or be a third-party beneficiary entitled to enforce the contract. *See O.A.I.C. Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 738 (Tex.App.-Dallas 2007, pet. denied).

Allan's contract claim was based on the text of the governing documents. Paragraph 1 of the Declaration provided that its terms apply to "any person acquiring or owning an interest in the property." Paragraph 11 stated, "All present and future Unit Owners, tenants and occupants of Units shall be subject to and shall comply with the provisions of this Second Amended Declaration, the Amended By-laws, and the Rules and Regulations, as they may be amended from time to time."

■ Privity of contract is established by proving that the defendant was a party to an enforceable contract with either the

plaintiff or a party who assigned its cause of action to the plaintiff. *Redmon v. Griffith,* 202 S.W.3d 225, 239 (Tex.App.-Tyler 2006, pet. denied). Allan was not a party to nor an assignee of the contract between Koraev and the Association. Accordingly, Koraev and Allan were not in privity of contract. Because Allan was not in privity of contract with Koraev, she has standing to bring a breach of contract claim only if she demonstrated she was a third-party beneficiary.

■ A third party, such as Allan, may sue to enforce a contract as a third-party beneficiary only if the contracting parties entered into the contract directly and primarily for the third party's benefit. *S. Tex. Water Auth. v. Lomas,* 223 S.W.3d 304, 306 (Tex.2007); *Esquivel v. Murray Guard, Inc.,* 992 S.W.2d 536, 543–44 (Tex. App.-Houston [14 Dist.] 1999, pet. denied). There is a presumption against conferring third-party-beneficiary status. *Lomas,* 223 S.W.3d at 306; *Esquivel,* 992 S.W.2d at 543. There are three types of third-party beneficiaries-donee, creditor, and incidental. Donee and creditor beneficiaries may bring suit to enforce a contract; incidental beneficiaries may not. *Esquivel,* 992 S.W.2d at 543. A person is a donee beneficiary if the performance of the contract inures to his benefit as a gift. A person is a donee beneficiary only if a donative intent expressly or impliedly appears in the contract. *Id.* A party is a creditor beneficiary if no intent to make a gift appears from the contract, but performance will satisfy an actual or asserted duty of the promisee to the beneficiary, such as an indebtedness, contractual obligation, or other legally enforceable commitment to the third party, and the promisee must intend that the beneficiary will have the right to enforce the contract. *Id.* at 543–44. "The intent to confer a direct benefit upon a third party 'must be clearly

and fully spelled out or enforcement by the third party must be denied.'" *Lomas,* 223 S.W.3d at 306 (quoting *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 651 (Tex.1999)). "Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract." *Id.*

Paragraph 1 of the Declaration stated, "The Association does hereby publish and declare that the ... covenants, ... limitations, and obligations contained herein shall be deemed to run with the land and shall be a burden and a benefit to the Association and any person acquiring or owning an interest in the property...."
Paragraph 19 of the Declaration stated,

> Each Owner shall comply strictly with the provisions of the Second Amended Declaration, the Amended Bylaws, Rules and Regulations, policies, and the decisions and resolutions of the Association adopted pursuant to the Second Amended Declaration or Amended Bylaws as the same may be lawfully amended from time to time. Failure to comply with any of the same shall be grounds for an action to recover sums due, for damages or injunctive relief or both, and for reimbursement of all attorney's fees incurred in connection therewith, which action shall be maintainable by the Managing Agent or Board of Directors in the name of the Association, in behalf of the Owners or, in a proper case, by an aggrieved owner.

Paragraph 38 of the Rules and Regulations required a unit owner to repair at his own expense any damage he (or his tenants) may cause to the condominium. Allan's testimony about the damages she suffered as a result of Koraev and his tenants' breach of the governing documents established that she was an aggrieved owner. But there must be some evidence that this is a "proper case" under Paragraph 19 of

the Declaration for Allan as an aggrieved owner to maintain an action to recover damages and be reimbursed for attorney's fees. After reading paragraph 19 to his client, Allan's attorney elicited the following testimony from his client at trial:

> Q. ... Did your homeowners' association take any action to recover the damages for your unit from the owner of Unit 234?
>
> A. No.
>
> Q. And based on their failure to act, did you have to act on your behalf?
>
> A. Yes.

Allan then testified about having to hire attorneys to represent her in this case and stated that she had agreed to pay them a reasonable fee for their services. The Association's failure to act is some evidence that this is a proper case for the aggrieved owner herself to bring suit for damages and for reimbursement of attorney's fees, as authorized under Paragraph 19 of the Declaration.

Paragraph 1 imposed a contractual duty on Koraev to follow the requirements of the Declaration, Bylaws, and Rules and Regulations for the "benefit of the Association and any person acquiring or owning an interest in the property." Allan was such a person. The contract between the Association and Koraev "clearly and fully express[ed] an intent to confer a direct benefit to" Allan and others owning an interest in the property. Thus, Koraev's "performance will come to [Allan] in satisfaction of a legal duty owed to [her] by [Koraev]." *See Stine v. Stewart,* 80 S.W.3d 586, 589 (Tex.2002) (citing and quoting *MCI,* 995 S.W.2d at 651). Paragraph 19 gave authority to Allan as an aggrieved owner to bring an action against Koraev for his failure to follow the Declaration, Bylaws, and Rules and Regulations "in a proper case." Therefore, Koraev's failure to perform the contract between

himself and the Association was a breach of his duty not to cause damage to Allan's unit. As an intended creditor beneficiary, Allan had standing to bring suit against Koraev for his breach of the governing documents.[4]

We conclude the governing documents made Allan an intended creditor beneficiary of the contract between Koraev and the Association and granted her authority to bring suit for Koraev's breach of those documents. Accordingly, we conclude the trial court erred by granting Koraev's motion for judgment notwithstanding the verdict on Allan's claim for breach of contract. We sustain Allan's first issue.

## ATTORNEY'S FEES

■ In her second issue, Allan asserts the trial court erred by granting Koraev's motion for judgment notwithstanding the verdict on the jury's award of her reasonable and necessary attorney's fees. Koraev moved for judgment notwithstanding the verdict on Allan's claim for attorney's fees because: (1) Allan cannot recover under breach of contract, and she had no other cause of action for which attorney's fees could be awarded; and (2) Allan failed to segregate her attorney's fees. Because we have concluded Allan could recover under her breach of contract cause of action, we must now determine whether the trial court erred by granting judgment notwithstanding the verdict because Allan failed to segregate her attorney's fees.

■ When a party presents multiple claims, some of which support recovery of attorney's fees and some of which do not, the party must segregate the attorney's fees attributable to claims for which fees

are recoverable. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310–11 (Tex.2006). In this case, Allan pleaded thirteen claims against five defendants. At trial, Allan asserted only one cause of action against one defendant for which attorney's fees could be awarded. Allan's attorneys testified they segregated the fees incurred against Koraev from those against the other defendants, but they did not testify to segregating the fees incurred for the breach-of-contract claim from the other claims.

■ Allan argues she had no burden to segregate her attorney's fees because the tort and contract claims required proof of the same set of facts and circumstances and were intertwined to the point of being inseparable. That different claims involve the same proof is not the standard for whether the attorney's fees incurred for the different claims must be segregated. "[I]t is only when the discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. In this case, Allan failed to show that all her attorney's fees were incurred for legal services involving the breach of contract action. For example, the fees incurred in drafting the original and amended petitions and the jury charge relating to the tort claims were not recoverable, while the portion of the fees relating to the contract claim was recoverable. *See id.* at 313.

■ The remedy for unsegregated attorney's fees is a new trial on the issue, not rendition of a take-nothing judgment on the claim for attorney's fees. *See id.* at

---

4. In *Schindler v. Baumann,* 272 S.W.3d 793 (Tex.App.-Dallas 2008, no pet.), we held one condominium owner could not sue another to enforce the declaration because nothing in the declaration purported to vest the plaintiff unit owner with authority to sue the defendant unit owner to enforce the declaration. *See id.* at 795. In this case, however, the Declaration gave Allan, an aggrieved owner, the right to sue Koraev.

314; *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex.1991). As the supreme court stated in *Tony Gullo Motors*, "Unsegregated attorney's fees are some evidence of what the segregated amount should be." *Tony Gullo Motors I, L.P.*, 212 S.W.3d at 314. Because Allan was entitled to recover attorney's fees for her breach-of-contract claim and the testimony of the unsegregated amount constituted some evidence of the segregated attorney's fees, we conclude the trial court erred by granting Koraev's motion for judgment notwithstanding the verdict on the jury's award of attorney's fees to Allan. We sustain Allan's second issue and remand Allan's claim for attorney's fees to the trial court for further proceedings.

## SETTLEMENT CREDIT

 In her third issue, Allan asserts the trial court erred by offsetting the damages award in the amount of Allan's pretrial settlement with the settling defendants. During the trial, the court admitted into evidence the settlement agreement showing the other defendants had paid Allan $10,750.[5]

According to Allan, appellees were not entitled to a settlement credit because their "right to a settlement credit is based on Chapter 33 of the Texas Civil Practice & Remedies Code ..., which is limited by the express language for that statute to actions based on tort...." Allan argues that if she was entitled to damages under her breach of contract claim, as we have determined, then chapter 33 of the civil practice and remedies code did not apply. However, appellees moved for a settlement credit under both chapter 33 and under the "one satisfaction" rule.

 The one-satisfaction rule prohibits a plaintiff from recovering twice for a single injury. *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex.2000); *Vanasek v. Underkofler*, 50 S.W.3d 1, 10 (Tex.App.-Dallas 1999), *rev'd on other grounds*, 53 S.W.3d 343 (Tex.2001). The rule applies when several defendants commit the same act, as well as when defendants commit technically differing acts that result in a single injury. *Casteel*, 22 S.W.3d at 390; *Vanasek*, 50 S.W.3d at 10. The fact that more than one defendant may have caused the injury or that there may be more than one theory of liability does not modify this rule. *Sterling*, 822 S.W.2d at 8; *see Galle, Inc. v. Pool*, 262 S.W.3d 564, 573–74 (Tex.App.-Austin 2008, pet. denied). Whether the rule applies is determined not by the cause of action, but by the injury. *See Sterling*, 822 S.W.2d at 7–8.

In this case, the jury charge contained a single damages question for damages "resulting from the occurrences in question." The jury did not make separate damages findings for the negligence and breach-of-contract claims. Allan's injuries, as found by the jury, included the damage to her unit and personal property and the additional living expenses she incurred. Allan alleged these injuries were caused by both the settling defendants and appellees. Nothing in the settlement agreement shows the settlement amount was for anything other than the damages found by the jury. If appellees were not given credit for the settlement, Allan would receive a double recovery for her injuries. Accordingly, we conclude the trial court did not err by offsetting the jury's award of damages in the amount of the settlement award. We overrule Allan's third issue.

---

**5.** The settlement agreement was admitted "for Court purposes only," and the parties agreed the exhibit would not be shown to the jury.

## EXCLUSION OF ALLAN'S TESTIMONY OF LOSS OF MARKET VALUE

In her fourth issue, Allan contends the trial court erred by excluding her testimony that the water and sewage incursions from Koraev's unit diminished the market value of her unit. Appellees objected to this testimony on multiple grounds, including Allan's failure to respond properly and timely to discovery requests concerning the loss of market value as part of her damages.

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. A trial court abuses its discretion only if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier,* 198 S.W.3d 408, 411 (Tex.App.-Dallas 2006, pet. denied).

In this case, Koraev requested that Allan disclose "the amount and any method of calculating economic damages." *See* Tex.R.App. P. 194.2(d). Allan responded as follows:

Plaintiff has suffered inconvenience, nuisance, negative health consequences and mental anguish, as would any person of ordinary sensibilities, from the repeated intrusion of raw sewage into her residence. In addition, while awaiting repairs following these episodes, she was constructively evicted from portions of her residence. When repairs were being attempted, Plaintiff (who is self-employed) was required to be present to allow access and supervise such repairs and was unable to pursue her occupation, thus suffering lost earnings. Certain of her personal property suffered damage from the leaks, and *as such water damages must be disclosed should Plaintiff list her residence for sale, such disclosure will result in a diminution in market value.* Furthermore, the failure of CCMC and the Association to fulfill the fiduciary duty owed to members of the Association requires the forfeiture of any fees Plaintiff paid to the Association. The refusal of Defendants to act forced Plaintiff to engage counsel and incur legal fees and expenses, and eventually lead [sic] to the filing of this litigation.

To date, Plaintiff believes she has suffered actual damages totaling $100,000.00 exclusive of attorney's fees and exemplary damages.

(Emphasis added.) At trial, Koraev objected that this response to the request for disclosure was inadequate as to the diminution in market value because it did not specify the amount of the loss in market value or the method of calculating the loss. The trial court sustained the objection and prohibited Allan from testifying about her unit's loss of market value.

Rule 193.6 provides that when a party has not timely made, amended, or supplemented a discovery response, the party may not introduce in evidence the material or information that was not timely disclosed unless the court finds that: (1) there was good cause for the failure to timely make the discovery response, or (2) the failure to timely make the discovery response will not unfairly surprise or unfairly prejudice the other parties. Tex.R. Civ. P. 193.6(a). A disclosure is presumed to be untimely if it was made less than thirty days before trial. *Id.* 193.5(b). The party seeking to introduce the evidence has the burden of establishing good cause or the lack of unfair surprise or prejudice. *Id.* 193.6(b). The trial court has discretion to determine whether the party met this burden. *Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 914 (Tex.1992); *Dolenz v. State Bar of Tex.,* 72 S.W.3d 385, 387 (Tex.App.-Dallas 2001, no pet.).

Allan argues appellees suffered no unfair surprise or prejudice because "long before trial," Allan provided appellees with the documentation supporting her other elements of economic loss, and appellees could have subtracted those amounts from the $100,000 stated in the disclosure, leaving the amount claimed for diminution in value. This argument has two flaws. First, although the request for disclosure concerned only economic damages, Allan's response combined her economic damages and her noneconomic damages, including mental anguish. Her response stated the $100,000 was her total "actual damages," not her total economic damages. Subtracting the documented economic losses from the $100,000 would not disclose her claimed diminution in value because it also included an unspecified amount for mental anguish. The second problem is that Allan's disclosure failed to set forth "any method of calculating economic damages."

Allan also argues appellees knew the amount of diminution in value because Allan disclosed it ten days before trial in her affidavit filed in her timely response to appellees' no-evidence motion for summary judgment. In the affidavit, Allan testified that the value of her residence, if it had not been damaged by appellees, would be about $95,000 based on the listing price of similar units in the condominium. She then testified that the water damage and mold produced by the water incursions from Koraev's unit "reduced the value of my residence to less than $50,000." Although the affidavit may have been timely in response to a motion for summary judgment, it was not a timely disclosure under rule of civil procedure 193 because it was made less than thirty days before trial. See TEX.R. CIV. P. 193.5(b). Furthermore, Allan's affidavit did not explain how she calculated this reduced value of "less than $50,000."

Allan also asserts the record does not show appellees suffered surprise or prejudice because Allan was deposed by Koraev but was never asked about the claimed damages of diminished market value of the unit. The issue, however, is not whether the evidence shows appellees suffered surprise or unfair prejudice but whether the record establishes that they did not suffer surprise or unfair prejudice. See TEX.R. CIV. P. 193.6(b). The fact that appellees did not ask Allan during her deposition about the diminution in value does not demonstrate that they would not have been surprised or unfairly prejudiced by her testimony about diminution in value. Allan also argues, "Because defendants never designated an expert to testify on valuation, it is impossible for them to demonstrate unfair surprise." Allan cites no authority for this assertion.

Allan cites three cases as supporting her argument that the trial court abused its discretion by excluding her testimony on diminution in value. See State v. Target Corp., 194 S.W.3d 46 (Tex.App.-Waco 2006, no pet.); Parker Plaza W. v. Boniuk, 153 S.W.3d 729 (Tex.App.-Dallas 2005, no pet.); Bellino v. Comm'n for Lawyer Discipline, 124 S.W.3d 380 (Tex.App.-Dallas 2003, pet. denied). Target Corp. involved the State's appeal of a condemnation case concerning a fifteen-foot wide strip of land used for parking and landscaping at a Target store. Target Corp., 194 S.W.3d at 48. Target's appraisal expert testified the damages would be $472,457 for the loss of thirty-five parking spaces. Id. The State's appraisal expert would have testified the damages were $72,000 for the loss of twenty-four spaces, and that the difference between the appraisals reflected a twenty-percent utilization rate that required the value to be discounted eighty percent. Id. at 48–49 & n. 2. The State's expert's theory of the twenty-percent utilization rate was timely disclosed, but a

page of calculations leading to the twenty-percent figure was not timely produced. *Id.* at 48, 50. Target re-deposed the State's expert two weeks after the disclosure of the calculations and ten days before trial, and Target had the opportunity to ask the expert about the calculations. *Id.* at 51. The Waco Court of Appeals concluded that, given this history, Target would not have been unfairly surprised by the State's expert's testimony, and the trial court abused its discretion by excluding the expert's testimony. *Id.* at 50–51. *Target Corp.* is distinguishable because, although Allan disclosed at least $45,000 of diminution damages in her pre-trial affidavit, Allan did not show Koraev had any opportunity to re-depose her. *Target Corp.* does not establish the trial court abused its discretion in this case.

In *Parker Plaza*, the trial court admitted the appellee's testimony about maintenance overcharges by the appellant even though the appellee failed to timely disclose the basis and method of calculating the overcharges. *Parker Plaza W., Ltd.,* 153 S.W.3d at 734. This Court determined the trial court did not abuse its discretion by admitting this evidence because the record showed the appellant was aware that the amount of the maintenance charges was in dispute and that the appellee's calculation of the overcharges was merely the application of simple arithmetic to figures provided by the appellant. *Id. Parker Plaza* is distinguishable. First, *Parker Plaza* was a review of whether the trial court abused its discretion by admitting untimely disclosed evidence, not whether the trial court abused its discretion by excluding the evidence. Due to the deferential nature of the standard of review for an abuse of discretion, an appellate court's upholding of admission of evidence does not indicate that it would have reversed an exclusion of that evidence under the same circumstances. *See Sun-*

*Bridge Healthcare Corp. v. Penny,* 160 S.W.3d 230, 239 (Tex.App.-Texarkana 2005, no pet.). Second, as explained above, appellees in this case could not have determined the amount Allan was claiming for diminution in value by the application of simple arithmetic because Allan's response also requested indeterminate amounts for noneconomic damages. *Parker Plaza* does not demonstrate that the trial court abused its discretion in this case by excluding Allan's testimony of diminution of her unit's market value.

In *Bellino,* an appeal of a disbarment order, the appellant complained that the trial court erred by permitting the Commission for Lawyer Discipline's witnesses to testify over objection when they were disclosed only two to three weeks before trial. *Bellino,* 124 S.W.3d at 383–84. This Court concluded the record supported a finding of lack of unfair surprise and that the trial court did not abuse its discretion by permitting the Commission's witnesses to testify. *Id.* at 384. We based this conclusion on two observations. First, most of the witnesses were the complainants on the grievances at issue. And second, considerable process is due to a respondent attorney before the Commission can file an action in district court, including the opportunity to respond to a complaint, and the opportunity for the attorney and the complainants to appear at a hearing before an investigatory panel. *Id.* Like *Parker Plaza, Bellino* is distinguishable because it is an appeal from the trial court's ruling admitting evidence, not one excluding it, and great deference is given to a trial court's decision in appellate review for an abuse of discretion. Second, the evidence in *Bellino* was the testimony of witnesses who were the complainants in administrative proceedings, and the appellant was aware of the substance of their testimony long before the trial. *See id.*

In the present case, however, appellees' only knowledge of Allan's testimony concerning her unit's loss of market value came from her affidavit filed ten days before trial. *Bellino* does not show the trial court abused its discretion in this case.

We conclude Allan has not shown the trial court abused its discretion by excluding Allan's testimony regarding the diminution in value of her unit due to appellees' negligence. We overrule her fourth issue.

## CONCLUSION

We conclude the trial court erred by granting judgment notwithstanding the verdict on Allan's claim for breach of contract and attorney's fees for that breach. We conclude the trial court did not err by offsetting the jury's award of Allan's actual damages by the amount of the pretrial settlement or by excluding Allan's testimony regarding the diminution in value of her unit. We reverse the trial court's judgment insofar as it orders that Allan take nothing on her claims for breach of contract and attorney's fees and remand those claims to the trial court for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.