

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00093-CV

EOG RESOURCES, INC.             APPELLANT AND APPELLEE

V.

JAMES R. HURT, JR.             APPELLEE AND APPELLANT

----------

## FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## **OPINION**

----------

## I. INTRODUCTION

Appellant and Cross-Appellee EOG Resources, Inc. appeals from an adverse judgment in favor of Appellee and Cross-Appellant James R. Hurt, Jr. Hurt appeals a postverdict ruling by the trial court. As to EOG's appeal, we will reverse and render. As to Hurt's appeal, we will affirm.

## II. Factual and Procedural Background

EOG is an oil and gas exploration and development company. Standard Investment Company (SIC) is a Texas corporation whose owners include John E. Houston and Molly D. Houston.

In August 2004, EOG, as lessee, and SIC, as lessor, entered into an oil and gas lease agreement in which SIC granted EOG the right to "explore[], drill[], and construct[] roads and structures thereon to produce, save, care for, treat and transport oil, gas and liquid hydrocarbons" from a tract of land covering over 11,000 acres in Hood and Erath Counties known as the Houston Ranch. In addition to royalties and other matters, the oil and gas lease addressed in detail "Surface Use Restrictions [and] Damages."

Hurt was in the ranching business for thirty-five to forty years. In January 2005, he entered into an agreement with SIC to lease grassland on the Houston Ranch for purposes of grazing cattle.[1] The lease began on February 1, 2005, and expired in January 2006. This was the first time that Hurt had grazed cattle on the Houston Ranch, and he had no other leases or contracts with SIC prior to January 2005.

---

[1]According to Hurt, grazing cattle includes the following: "[S]omeone furnishes the cattle, someone furnishes the grass and the care, and the owner of the cattle pays a grazing fee, normally per head per month."

2

In July 2006, Hurt executed another agreement to lease grassland on the Houston Ranch. The lease identified the "LESSOR" as "Molly Houston (in care of Jim Howard . . )," and it expired by its terms on June 31, 2007.

In early January 2008 at the Houston Ranch, Hurt received a shipment of cattle owned by John Bill Oman.[2] Hurt grazed Oman's cattle over the next few months before moving 327 head of cattle to the Houston Ranch's Northwest Trailer pasture on June 21, 2008. Hurt had checked the condition of the Northwest Trailer pasture's perimeter fence about three weeks to a month before moving the cattle there, but he did not check the fence on or about June 21, 2008. On June 27, 2008, Hurt retrieved Oman's cattle from the pasture and shipped 293 head of cattle—thirty-four less than he had transferred into the pasture on June 21, 2008. Hurt searched the pasture for the cattle but only discovered that parts of between 100 and 200 feet of a portion of the perimeter fence were damaged or down. The section of damaged fence was located approximately 250 feet from the edge of the Houston Ranch Number 22-H well site. Outlaw Enterprises, a contractor hired by EOG, had performed work at the 22-H well site from June 16, 2008 to June 18, 2008.

On July 8, 2008, Hurt contacted Marco Herrera, a project coordinator for a company that performed work on the Houston Ranch, and notified him about the

---

[2]Hurt had grazed cattle owned by Oman on "many occasions."

3

damaged fence at the 22-H well site.[3] Hurt and Herrera met J.D. Fish, an EOG foreman, at the well site that same day to view the fence, and EOG repaired the fence the following two days, on July 9 and 10, 2008.[4] According to Herrera and Fish, Hurt did not say anything about lost or missing cattle at the July 8, 2008 meeting. Hurt eventually recovered all but ten or eleven head of Oman's cattle, and he demanded that EOG compensate him for ten head of cattle at a total of $7,250 because, according to Hurt, EOG was responsible for the damage to the fence near the 22-H well site. EOG never compensated Hurt for the lost cattle.

In March 2009, Hurt sued EOG for breach of the 2004 oil and gas lease agreement, alleging that he was a third-party beneficiary under the lease agreement.[5] At the jury trial, the trial court denied EOG's motions for a directed verdict on Hurt's breach of contract claim, and the jury awarded Hurt (1) $7,250 for damages caused by EOG's failure to comply with the oil and gas lease agreement and (2) $25,000 in attorneys' fees. After the jury returned its verdict, Hurt orally requested a ruling that EOG's breach of the oil and gas lease agreement resulted in an ipso facto termination of the lease agreement, but the

[3]Hurt testified that he contacted EOG on or about June 28, 2008.

[4]Fish opined that the fence had been "run into and run over" by some kind of machinery.

[5]At one point, Hurt asserted a claim against EOG for negligence, but he amended his pleadings to assert only claims sounding in contract. In his live pleading, Hurt alleged in part that he was entitled to enforce the lease agreement against EOG as a third-party creditor beneficiary and because he was an assignee or successor in interest of SIC.

4

trial court denied the request. EOG filed a motion for new trial and a motion for judgment notwithstanding the verdict and, alternatively, a motion to modify, correct, or reform the judgment. All were denied. These appeals followed.

### III. HURT'S BREACH OF CONTRACT CLAIM

In its first issue, EOG argues that "[t]he trial court erred in holding that Hurt is a third-party beneficiary" of the oil and gas lease agreement. EOG contested Hurt's status as a third-party beneficiary in its motions for a directed verdict on Hurt's breach of contract claim and in its motion for judgment notwithstanding the verdict as to the jury's finding that EOG failed to comply with the oil and gas lease agreement. We therefore construe EOG's argument as challenging the trial court's rulings denying EOG's motions contesting Hurt's breach of contract claim on the basis of his status as a third-party beneficiary.

A directed verdict is proper when the evidence conclusively establishes the right of the movant to judgment as a matter of law. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). A trial court may disregard a jury verdict and render judgment notwithstanding the verdict if a directed verdict would have been proper. *See* Tex. R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex. 2003); *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991).

5

Hurt was neither a party to nor an assignee of the oil and gas lease agreement between EOG and SIC. Therefore, he could maintain an action to enforce the oil and gas lease agreement only if he was a third-party beneficiary of the lease agreement. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999) ("We agree with MCI that TU is not a third-party beneficiary of the contract between MCI and MoPac; therefore, it cannot maintain an action to enforce the contract."); *Allan v. Nersesova*, 307 S.W.3d 564, 571 (Tex. App.—Dallas 2010, no pet.).

It is well settled that third-party beneficiary claims succeed or fail according to the provisions of the contract upon which suit is brought. *Union Pac. R.R. Co. v. Novus Int'l, Inc.*, 113 S.W.3d 418, 421 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). When, as here, a contract is unambiguous, the construction of the written instrument is a question of law for the court. *MCI*, 995 S.W.2d at 650. When interpreting a contract, we must examine the entire agreement and give effect to all of its provisions. *Id.* at 652.

The law governing third-party beneficiaries is "relatively settled." *Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 899 (Tex. 2011). A third party may recover on a contract made between other parties if the parties (1) intended to secure a benefit to that third party and (2) entered into the contract directly for the third party's benefit. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006); *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

A third party does not have the right to enforce a contract if it received only an incidental benefit, and a court will not create a third-party beneficiary contract by implication. *Stine*, 80 S.W.3d at 589; *MCI*, 995 S.W.2d at 651. An agreement must clearly and fully express an intent to confer a direct benefit on the third party. *Stine*, 80 S.W.3d at 589. Therefore, a party is presumed to contract only for its own benefit, and any intent to benefit a third party must be clearly apparent and will not be presumed. *MCI*, 995 S.W.2d at 651; *see Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Any doubt concerning intent should be resolved against the third party. *Tawes*, 340 S.W.3d at 425; *MCI*, 995 S.W.2d at 651.

To qualify as an intended third-party beneficiary, a party must show that she is either a "donee" or "creditor" beneficiary of the contract.[6] *Stine*, 80 S.W.3d at 589. A creditor beneficiary is a third person to whom the contract promisee owes a debt, contractual obligation, or other legally enforceable commitment. *See MCI*, 995 S.W.2d at 651.

Here, the oil and gas lease agreement was "made and entered into" between only SIC and EOG. SIC holds executive rights "for the leasing of the oil, gas and other related hydrocarbons in and under" the Houston Ranch, and EOG is an oil and gas exploration and development company. In exchange for royalties paid by EOG to SIC, EOG acquired the right to explore and develop oil, gas, and other hydrocarbons on the Houston Ranch. The numerous obligations

---

[6]Hurt does not contend that he is a third-party donee beneficiary under the oil and gas lease agreement.

set out in the lease agreement run between SIC and EOG. Hurt acknowledged at trial that he had not contracted with either EOG or SIC nor did either EOG or SIC owe him the performance of any duty or obligation prior to EOG's and SIC's execution of the August 2004 oil and gas lease agreement. An examination of the entire lease agreement confirms that neither EOG nor SIC intended to confer any benefit upon Hurt when they executed the lease agreement; instead, EOG and SIC sought to benefit themselves by entering into the lease agreement.

Hurt argues that the oil and gas lease agreement does confer a benefit upon him because he is a person identified as a "Lessor's tenant" in sections 13(d) and 13(f) of the lease agreement. Section 13 of the oil and gas lease agreement is entitled "Surface Use Restrictions; Damages." Section 13(d) states in relevant part as follows:

> (d) Lessee will not cut or go over any fence or fences of Lessor, *or Lessor's tenant*, at any time or in connection with any operations of the Land without first obtaining Lessor's and *Lessor's tenant*[']*s*, expressed consent thereto in writing. . . . *Lessee agrees to pay to Lessor* the replacement cost for any livestock *lost or killed* as a result of Lessee's operations upon the Land or Lessee's entry or exit from the Land. [Emphasis added.]

Section 13(f) states in relevant part as follows:

> (f) Lessee shall at all times use reasonable care in all of the Lessee's operations on the premises of Lessor to prevent *injury or damage to the cattle*, livestock, buildings or other property of *Lessor or Lessor's tenant* situated on the surface of said Land, . . . *and Lessee shall pay Lessor and Lessor's tenants for all actual damages . . . to* the Land, crops, buildings, *livestock*, fences, tanks, water wells, and without limitation, all other property of Lessor

8

situated on the surface of the Land resulting from [Lessee's] operations on the Land.[7] [Emphasis added.]

Hurt is not a "Lessor's tenant" under section 13(d) or 13(f) of the oil and gas lease agreement because his agreement with SIC to lease grassland on the Houston Ranch expired by its own terms in January 2006. Hurt opined at trial that his agreement with SIC was "renewed" in July 2006 when he executed another agreement to lease grassland on the Houston Ranch, but this subsequent agreement was executed by Molly Houston (in care of Jim Howard), not SIC.[8] Although Molly is identified as one of SIC's owners in the oil and gas lease agreement between EOG and SIC, there is no evidence that Molly signed the July 2006 agreement with Hurt in a representative capacity for SIC. *See Morrow v. LaRue*, 544 S.W.2d 842, 844 (Tex. Civ. App.—Dallas 1976, no writ) ("If the contract shows on its face that the individual . . . signed in a representative capacity, then it is established that the 'person' who contracted was the corporation rather than the individual."). There is also no allegation or evidence that Molly and Hurt modified their agreement to make Hurt a grassland

---

[7]Somewhat similar to paragraph 13(f), paragraph 13(m) addresses "death of or injury to . . . Lessor's tenant's livestock."

[8]Even this agreement expired by its own terms on June 31, 2007, before the June 2008 events forming the basis of Hurt's claims occurred, but the parties to that agreement apparently continued to operate under it. *See Sieber & Calicutt, Inc. v. La Gloria Oil & Gas Co.*, 66 S.W.3d 340, 347 (Tex. App.—Tyler 2001, pet. denied) (reasoning that contract was still in effect when employee died because parties had continued to operate under contract after it had expressly expired).

lessee of SIC instead of Molly. *See Arthur J. Gallagher & Co. v. Dietrich*, 270 S.W.3d 695, 701–02 (Tex. App.—Dallas 2008, no pet.) (reasoning that contract modification is an affirmative defense and must satisfy traditional requirements of a contract—a meeting of the minds supported by consideration).

Even if Hurt is somehow a "Lessor's tenant" under the oil and gas lease agreement, which he is not, he would still not be entitled to enforce the oil and gas lease agreement against EOG because he confirmed at trial that his claims against EOG involved only "lost" cattle and that he had no evidence of "injury" or "damage" to the ten cattle for which he was seeking compensation. Therefore, section 13(d) of the oil and gas lease agreement, which addresses lost livestock, not section 13(f), which addresses injured or damaged livestock, would cover Hurt's claims. But section 13(d) requires EOG to pay replacement costs for lost livestock to only the "Lessor," not the "Lessor's tenant." Consequently, the unambiguous oil and gas lease agreement would not allow Hurt to enforce the agreement against EOG.

*Allan v. Nersesova* is particularly instructive. 307 S.W.3d at 571–73. There, the court of appeals held that Allan, a condominium owner who sustained damage to her unit, was an intended third-party beneficiary entitled to enforce an agreement (the declaration, bylaws, rules and regulations for the condominiums) between the owners' association and Koraev, the owner of the condominium unit above Allan whose tenant caused the damage to her unit. *Id.* at 568–69, 571.

The agreement imposed a duty on Koraev to follow the agreement's requirements for the "benefit of . . . any person acquiring or owning an interest in the property," which included Allan. *Id.* at 572. Thus, "[t]he contract between the Association and Koraev 'clearly and fully express[ed] an intent to confer a direct benefit to' Allan and others owning an interest in the property." *Id.* The agreement also provided that "[f]ailure to comply with any [bylaws, rules, and regulations] shall be grounds for an action to recover sums due, for damages . . ., and for reimbursement of all attorney's fees incurred in connection therewith, *which action shall be maintainable* . . . in a proper case, *by an aggrieved owner*." *Id.* (emphasis added). Thus, the agreement "gave authority to Allan as an aggrieved owner to bring an action against Koraev for his failure to follow the" agreement. *Id.*

Unlike in *Allan*, in which Allan was an "aggrieved owner" entitled to "bring an action" against Koraev, in this case, Hurt is not a "Lessor's tenant" under the oil and gas lease agreement, and section 13(d) addressing "lost" cattle does not permit Hurt to enforce the lease agreement against EOG.

We make one additional observation regarding Hurt's "Lessor's tenant" argument. As mentioned, SIC held the executive right to lease and develop minerals on the Houston Ranch. The executive right is an interest in property, one of several essential attributes of a severed mineral estate. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986); *see Lesley v. Veterans Land Bd. of State*,

11

No. 09-0306, 2011 WL 3796568, at *1 n.1, *5 (Tex. Aug. 26, 2011). It is well settled that a grant of mineral interests by the fee owner creates two separate and distinct estates: a surface estate and a mineral estate. *Acker v. Guinn*, 464 S.W.2d 348, 352 (Tex. 1971). In the absence of evidence demonstrating otherwise, an owner of an executive right would not be capable of granting a right to lease the surface for grazing purposes, that being the domain of the surface title owner. Here, the evidence shows only that SIC held the executive right to lease minerals on the Houston Ranch. There is no evidence that SIC possessed the legal capacity to grant a grazing lease to Hurt—a use of the surface that is distinct from the mineral interests covered by SIC's executive right.[9]

Hurt argues that "[t]he fact that [EOG] will be forced by the Paid-Up Oil and Gas Lease to pay for or replace fencing it destroys or otherwise damages makes the fencing provision a direct benefit from [EOG] to [him] also." However, EOG's obligation to repair damaged fences on the Houston Ranch is merely an incidental benefit to Hurt resulting from his presence grazing cattle on the Houston Ranch.

We conclude and hold that, as a matter of law, Hurt is not a third-party creditor beneficiary of the oil and gas lease agreement between EOG and SIC. Therefore, he is unable to maintain an action against EOG to enforce the oil and

---

[9]Indeed, regarding "issues dealing with the surface estate of the Land," the oil and gas lease agreement between EOG and SIC appointed I.T. Houston, IV "as its agent with full authority to make such elections, approvals and consents on behalf of" SIC.

12

gas lease agreement.  *See MCI*, 995 S.W.2d at 650–51.  The trial court should have sustained one of EOG's multiple challenges to Hurt's status as a third-party beneficiary.  We sustain this part of EOG's first issue, and we need not address EOG's remaining arguments and issues.  *See* Tex. R. App. P. 47.1.

## IV. TERMINATION OF OIL AND GAS LEASE AGREEMENT

In his sole issue, Hurt argues that the trial court "abused its discretion when it failed to find the Paid Up Oil and Gas Lease on the I.T. Houston Ranch did not terminate under the specific terms stated in the Lease."  He contends that "there was sufficient evidence of a breach which constituted a 'Lease Violation' under the Lease without remediation and the Lease should have terminated '*ipso facto*' as negotiated by the Parties to the Lease."

Section 18 of the oil and gas lease agreement addresses "Lease Violation[s]" and provides in relevant part as follows:

> Lessee shall strictly comply with all provisions of this lease, and the failure by Lessee to strictly comply with each and every provision of this lease shall be a breach of such terms and a violation of the lease (a "Lease Violation").  In the event of a Lease Violation, Lessee shall take all necessary actions to remedy the Lease Violation and bring Lessee back into compliance with the lease. *In the event Lessee fails to immediately cure or remediate the Lease Violation, the following provisions shall apply*:
>
> (a)  Lessor shall provide Lessee with written notice of any Lease Violation. . . .
>
> . . . .
>
> (c)  For Lease Violations which pose an immediate threat to people or livestock, Lessee shall have five (5) business day[s] after

the date of the notice to respond to Lessor and commence a remediation plan.

. . . .

(e)     For delays under paragraph (c), where there is an immediate threat to people or livestock, the fine shall commence the sixth (6th) day after the effective date of the notice and shall be $500.00 per day for each day of delay for days seven (7) through ten (10), $1,000.00 per day for days eleven (11) through sixteen (16), and $2,500.00 per day for each day thereafter. *If a remediation plan has not been agreed or commenced at the expiration of twenty (20) days from the effective date of notice, all of Lessee's right, title and interest in the lease, shall ipso facto terminate* . . . .  [Emphasis added.]

The following exchange occurred *after* the trial court announced the jury's verdict and released the jury from service:

THE COURT:  All right.  [Hurt's counsel], prepare a proposed judgment, please, sir.

[Hurt's counsel]:  Your Honor, at this time, I would like to request an instruction from the Court as to whether the breach and the failure to cure in the appropriate time period resulted in a termination of the lease ipso facto.

THE COURT:  It did not.

[Hurt's counsel]:    I'll prepare the judgment accordingly, sir.

Hurt's argument is unpersuasive for several reasons.  First and foremost, Hurt cannot enforce section 18 of the oil and gas lease agreement against EOG because he is not a third-party beneficiary of the lease agreement.

Further, even if Hurt could enforce the lease agreement, unless the evidence conclusively proved that the lease agreement terminated under the

14

provisions of section 18, Hurt waived this issue because he did not request a jury question on this issue. *See* Tex. R. Civ. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."); *Akin v. Dahl*, 661 S.W.2d 911, 913 (Tex. 1983), *cert. denied*, 466 U.S. 938 (1984). The provision in section 18(e) addressing ipso facto termination of the oil and gas lease agreement applies only if the lessee "fails to immediately cure *or* remediate the Lease Violation." [Emphasis added.] Fish testified that, although he did not think EOG was responsible for the damage to the fence, he caused the fence to be repaired the following two days after he met Herrera and Hurt at the 22-H well site. Thus, there is evidence that EOG immediately cured the alleged section 13(d) lease violation—damaging a fence—by repairing the fence, rendering inapplicable section 18(e)'s ipso facto termination provision. Moreover, even if there was evidence that EOG failed to immediately cure the lease violation, there is no evidence that SIC gave EOG written notice of a lease violation as required by section 18(a). In the absence of written notice, the timetables in section 18(e) cannot run. Because the evidence did not conclusively prove that the oil and gas lease agreement terminated ipso facto under the provisions of section 18, Hurt waived this issue for appellate review. *See* Tex. R. Civ. P. 279. Accordingly, we overrule Hurt's only issue.

## V. Conclusion

Having overruled Hurt's only issue, we affirm the trial court's postverdict ruling denying Hurt's requested relief. Having sustained a dispositive part of EOG's first issue, we reverse the trial court's judgment in favor of Hurt and render judgment that he take nothing on his breach of contract claim and his claim for attorney's fees.[10]

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED: December 15, 2011

---

[10]Hurt recovered attorney's fees in connection with his breach of contract claim. *See Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 796 (Tex. App.—Fort Worth 1996, no writ) (rendering judgment against plaintiff on claim for attorney's fees recovered in connection with third-party beneficiary, breach of contract claim).

16