

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and PRUCO LIFE INSURANCE COMPANY, | § § § | No. 08-12-00077-CV |
| Appellants/Cross-Appellees, | § | Appeal from the |
| v. | § | 327th District Court |
| IRASEMA SAGARNAGA DURANTE, | § | of El Paso County, Texas |
| Appellee/Cross-Appellant. | § § | (TC#2009-5465) |

**OPINION**

The Prudential Insurance Company and Pruco Life Insurance Company (collectively "Pruco") appeal a judgment entered against them in favor of Irasema Sagarnaga Durante ("Sagarnaga"). This case arises out of Pruco's non-payment of life insurance proceeds based on a rejected change of beneficiary form by the insured. Pruco brings six issues: (1) Sagarnaga lacked standing to sue Pruco for breach of the insurance policy and common-law and statutory bad faith; (2) the evidence is legally and factually insufficient to support the finding Pruco breached the insurance policy; (3) the evidence is legally and factually insufficient to support the finding that Pruco breached common-law and statutory duties of good faith and fair dealing, specifically Chapters 541 and 542 of the Texas Insurance Code; (4) the trial court erred in admitting expert testimony over Pruco's objection; (5) the trial court erred by awarding Sagarnaga 18 percent

statutory penalty interest on the claim amount of $375,000; and lastly (6) the trial court erred by awarding Sagarnaga attorney's fees. Sagarnaga cross-appealed, asserting in a single issue the trial court abused its discretion by failing to award her post-trial and appellate attorney's fees. We affirm in part, reform the judgment, and remand in part.

## BACKGROUND

Dr. Arturo Garcia Fernandez was married to Margarita Henric Chavez, with whom he had three children: Eloisa, Cecilia, and Arturo Garcia Henric, Jr. In July 2002, Dr. Garcia purchased a Pruco life insurance policy (the "Policy") for a death benefit of $750,000. In the application, Dr. Garcia designated his wife, Margarita, as the primary beneficiary and contingent beneficiaries were their three children. After Margarita's death in 2005, Dr. Garcia married Irasema Sagarnaga Durante in 2007.

In February 2008, Dr. Garcia called Pruco regarding the Policy. In that recorded conversation, Dr. Garcia requested a change of beneficiary form ("COB") for the Policy. Pruco instructed Dr. Garcia that they would complete the COB form and send it to him for his approval and signature. The Pruco representative asked Dr. Garcia for the names of the beneficiaries and the percentages each would be assigned.[1] Dr. Garcia replied that he wanted to designate his wife, Sagarnaga as a 50 percent beneficiary and his adult children as the remaining 50 percent beneficiaries. Pruco sent the COB form to Dr. Garcia, but the requested beneficiary designations were not included on the COB form.

On April 3, 2008, Dr. Garcia and Sagarnaga went to the El Paso Prudential office. Dr. Garcia spoke with Solis, a Pruco associate, and Schmid, a Pruco insurance agent. Sagarnaga,

---

[1] Because the Pruco representative, Ortega, was not trained in "fractionalized" beneficiary designations (where the proceeds are split between various individuals), he was supposed to have forwarded Dr. Garcia's call to a specialized unit within Pruco which is familiar with fractionalized beneficiaries, however Ortega did not do this.

who speaks some English, was able to understand some of the discussion between her husband, Solis, and Schmid. Dr. Garcia explained to Sagarnaga the changes he was making to the Policy. Sagarnaga understood, during this meeting, Dr. Garcia executed the COB form making her a 50 percent beneficiary and the children the remaining 50 percent beneficiaries of the Policy.

Dr. Garcia's COB form, dated April 3, 2008, listed the beneficiaries as follows: the *primary beneficiary designation* stated Sagarnaga was to receive 50 percent of the Policy proceeds, 12 percent to Arturo Garcia, Jr., 13 percent to Eloisa, and 25 percent to Cecilia. The *contingent beneficiary*, however, in the section titled "*Additional/Special Beneficiary Requests*" [Emphasis added] on the COB form, read as follows:

> Pay 50% to Irasema Sagarnaga Durante, wife, if living otherwise same proportion of this to my two daughters and son, Arturo Garcia, Cecilia Garcia, Eloisa Garcia, if living, otherwise pay balance if any to Irasema Sagarnaga Durante, wife.

Pursuant to Pruco's contract, a policy owner could change, *inter alia*, the beneficiary, by sending to Pruco a request "in a form that meets our needs." According to the terms of the Policy, if Pruco received a COB request, Pruco would record the change and file it. The change of beneficiary would be effective as of the date the request was signed. Pruco's internal procedures were clear that in order for a COB to be accepted in its entirety, it "must clearly specify the settlement to be in effect at the death of the Insured."

The signed COB form by Dr. Garcia was received by Pruco on April 10, 2008. The COB form was routed to the "settlement options" department where it was reviewed by Mehrotra, a Pruco associate. While the *primary beneficiary designation* was satisfactory, Mehrotra found Dr. Garcia's changes for the *contingent beneficiary* or *"additional/special beneficiary designation"* to be "ambiguous." Based on the ambiguity regarding the contingent beneficiaries,

3

Mehrotra initiated a "turndown procedure," in which Pruco did not accept or record, in its entirety, Dr. Garcia's COB form. Pruco then prepared a new COB form. The new COB form did not change the primary beneficiary designation, it only modified the language for the *additional/special beneficiary* section, based on what Mehrotra believed Dr. Garcia was attempting to do. The beneficiary provision proposed by Mehrotra was as follows:

> 50% of the proceeds . . . to Irasema Sagarnaga Durante, Beneficiary, wife of the Insured, if living, otherwise as follows:
>
>> 50% of such fund to Celcilia M. Garcia Henric . . .
>> 26% of such fund to Eloisa Garcia Henric . . .
>> 24% of such fund to Arturo Garcia Hendric . . .
>>
>> 25% of proceeds to said Cecilia M. Garcia Henric . . .
>> 13% of proceeds to said Eloisa Garcia Henric . . .
>> 12% of proceeds to said Arturo Garcia Henric . . .

Mehrotra sent the new COB form to Dr. Garcia on April 14, 2008, and requested he review it. If after the review, the COB form stated what Dr. Garcia intended for the *additional/special beneficiary* section, he was to sign and return it to Pruco. If not, Dr. Garcia should contact Pruco to obtain a corrected COB form. Dr. Garcia received this correspondence, but there is no evidence the letter was opened or read by Dr. Garcia before he died.[2]

Dr. Garcia died in Brazil on September 22, 2009. Dr. Garcia's daughter, Eloisa, advised Pruco of his death two days later. The children each filed a claim for benefits under the Policy in October 2009.

On October 21, 2009, Sagarnaga met with Schmid in El Paso. She asserted that Dr. Garcia had changed the beneficiary designation to include her under the Policy. Pruco informed Schmid about the issue of Dr. Garcia's COB form. Schmid suggested Sagarnaga contact

---

[2] Prior to his death, Dr. Garcia had been sick several times and much of his mail went unopened. Sagarnaga found a box of unopened mail from various companies after Dr. Garcia's death, including mail from Pruco.

Pruco directly. Sagarnaga then called Pruco and was advised Dr. Garcia's COB form naming her as a 50 percent beneficiary had not been accepted or recorded. Pruco stated Sagarnaga was not a beneficiary under the Policy. Pruco instructed Sagarnaga to submit a written statement regarding her claim including any additional supporting information within fifteen days.[3]

That same day, October 21, after her telephone call to Pruco, Sagarnaga sent a letter stating she was a beneficiary and made a claim for benefits. Pruco referred Sagarnaga's statement to its claims department to handle as an adverse claims case on October 27.[4] On November 3, Pruco responded in writing to Sagarnaga, and explained that Dr. Garcia's COB form was unacceptable. Pruco stated that due to the lack of response by Dr. Garcia to their "turndown" letter, their position was that their liability was to the contingent beneficiaries, the three children. On November 13, Pruco sent a second letter reiterating their position and stated that if Sagarnaga had documentation to support her claim to submit it within ten days. On November 18, the claims of all parties were formally referred to Pruco's legal department. According to Pruco, the claim was referred after Pruco performed an internal investigation and they determined Sagarnaga's claim had merit.

On December 17, 2009, the children filed suit against Pruco, seeking payment of the entire death benefit, plus statutory penalties. On January 8, 2010, Pruco answered, counterclaimed and included a third party complaint interpleader action naming Sagarnaga. On March 9, 2010, Sagarnaga filed a counterclaim against Pruco, seeking 50 percent of the disputed death benefit and

---

[3] Pruco's internal notes from October 21, 2009 reflect the following:

> *** wife is saying that their rep was there when she and the insured requested to set up bene to be split 50% to her and the children ***
> >> sent ref for possible adverse claim, wife stated that if she will not get any response from pru she will seek the assistance of her atty.

[4] During this time Pruco investigated Dr. Garcia's death, pursuant to its internal policies, including obtaining official death certificates, to verify Dr. Garcia's death. Pruco also advised the children that Sagarnaga had made a claim.

damages for: (1) breach of contract; (2) violation of the Prompt Payment Statute;[5] (3) common-law bad faith; and (4) statutory bad faith claims. Sagarnaga also filed a third-party claim against Schmid and Prudential, seeking the same damages based on Schmid's purported negligence and Texas Insurance Code violations.

On March 9, 2010, Pruco filed a motion asking the court to interplead the death benefit pursuant to TEX.R.CIV.P. 43, find they had completely discharged all their liabilities to the claimants and dismiss with prejudice the lawsuits against them. On March 29, Sagarnaga filed her response arguing Pruco had not met the elements for relief under a Rule 43 interpleader action. At a hearing on March 25, 2010, the court granted Pruco's request to deposit 50 percent of the death benefit ($375,000) into the registry of the court, but denied Pruco's motion to dismiss. At that time, the children and Sagarnaga agreed 50 percent of the Policy benefit was to be paid directly to the children. On June 3, 2010, Pruco deposited $382,483.50 into the court's registry. Prior to trial, the children and Sagarnaga entered into another settlement agreement for an additional $90,000 from the remaining registry funds to be paid to the children. The children did not participate in the trial and the court later dismissed their claims.

The trial court conducted a two day trial in August 2011.[6] At trial, a Pruco employee acknowledged the primary beneficiary designation was "quite clear," but that Pruco failed to record Dr. Garcia's COB in its entirety due to Pruco finding the *"additional/special beneficiary designation"* to be ambiguous.[7] Additionally, without objection from Pruco, Sagarnaga's

---

[5] TEX.INS.CODE ANN. §§ 542.051 to 542.061 (West 2009 and Supp. 2014).

[6] Sagarnaga's claims against Schmid were dismissed with prejudice before trial.

[7] One of the findings of fact challenged by Pruco is finding #99: "The Company admits that Garcia's primary designation on the COB is clear."

6

attorney David Pierce testified regarding her attorney's fees.

The trial court made 168 findings of fact and 32 conclusions of law, many of which Pruco objected to. The court found Sagarnaga was a beneficiary under the Policy; Pruco had breached the Policy; and violated Chapters 541 and 542 of the Texas Insurance Code. The trial court found Pruco breached the insurance contract when it: (1) "failed to file and record the primary beneficiary designation" and "give it effect" from the date it was signed; and (2) failed to distribute 50 percent of the death benefit to Sagarnaga. The court entered an amended judgment in January 2012 awarding Sagarnaga: (1) $90,000 as damages for breach of contract; (2) statutory penalty interest of 18 percent on $375,000 from November 3, 2009 through the date judgment was rendered; (3) 5 percent post-judgment interest until paid in full; and (4) $200,000 in attorney's fees through trial. Both parties appealed.

### Standard of review

Findings of fact in a bench trial have the same force and dignity as a jury's verdict upon questions and are reviewed for legal and factual sufficiency of the evidence by the same standards. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Stanley Works v. Wichita Falls Independent School District*, 366 S.W.3d 816, 824 (Tex.App.--El Paso 2012, pet. denied). Where, as here, the appellate record contains a reporter's record, findings of fact are not conclusive on appeal if the contrary is established as a matter of law or if there is no evidence to support the findings.[8] *Vernon v. Perrien*, 390 S.W.3d 47, 57 (Tex.App.--El Paso 2012, pet. denied).

In a factual sufficiency review, we consider all of the evidence, both the evidence which

---

[8] In a civil case, if the trial court's factual findings are unchallenged, as some are in this case, they are binding on the appellate court unless the contrary is established as a "matter of law," or there is "no evidence" to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). In other words, our review of unchallenged findings is restricted to whether the evidence is legally sufficient to support them.

7

tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. *Sotelo v. Gonzales*, 170 S.W.3d 783, 787 (Tex.App.--El Paso 2005, no pet.). *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). After considering and weighing all the evidence, we set aside the fact-finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Rusty's Weigh Scales and Service, Inc. v. North Texas Scales, Inc*., 314 S.W.3d 105, 110 (Tex.App.--El Paso 2010, no pet.). The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. Ltd. Partnership v. Pascouet*, 61 S.W.3d 599, 615-16 (Tex.App.--Houston [14th Dist.] 2001, pet. denied). We will not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

A legal sufficiency or "no evidence" challenge will be sustained if the party suffering the adverse decision at trial shows: (1) the complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidences establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Stanley Works*, 366 S.W.3d at 828. When conducting a legal sufficiency review, we must view the evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 830; *Stanley Works*, 366 S.W.3d at 828. The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827; *Stanley Works*, 366

S.W.3d at 828.

We review the trial court's legal conclusions *de novo*. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## DISCUSSION

Pruco bring six issues: (1) Sagarnaga lacked standing to sue Pruco for breach of the insurance policy and common-law and statutory bad faith; (2) the evidence is legally and factually insufficient to support the finding that Pruco breached the insurance policy; (3) the evidence is legally and factually insufficient to support the finding that Pruco breached common-law and statutory duties of good faith and fair dealing, specifically Chapters 541 and 542 of the Texas Insurance Code; (4) the trial court erred in admitting expert testimony over Pruco's objection; (5) the trial court erred by awarding Sagarnaga 18 percent statutory penalty interest on the claim amount of $375,000; and (6) the trial court erred by awarding Sagarnaga attorney's fees. These issues are interrelated, and we will address them accordingly.[9]

### Standing

Pruco contends the trial court erroneously found Sagarnaga had standing. An insurance policy is a contract between the insurer and the insured/owner of the policy. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). A beneficiary named under a life-insurance policy has no standing to recover under the policy unless his interest has vested. *Rotating Services Industries, Inc. v. Harris*, 245 S.W.3d 476, 481 (Tex.App.--Houston [1st Dist.] 2007, pet. denied), *citing Cates v. Cincinnati Life Ins. Co.*, 947 S.W.2d 608, 614 (Tex.App.--Texarkana 1997, no writ), *op. on remand from* 927 S.W.2d 623 (Tex. 1996). Texas law holds that a named beneficiary has no vested interest in the policy proceeds unless one of the following conditions

---

[9] Unless otherwise specified, section citations, are to the Texas Insurance Code.

occurs: (1) a contract—separate from the policy itself—proscribes any change in the designation of the beneficiary; (2) the policy itself does not authorize the owner of the policy to change the beneficiary; or (3) the insured dies. *Harris*, 245 S.W.3d at 481. Until any one of these conditions occur and the beneficiary right's become vested, an insurer may not prevent the policy owner from exercising his right to change the beneficiary. *Id.* at 481, *citing State Farm Life Ins. Co. v. Martinez*, 174 S.W.3d 772, 781 (Tex.App.--Waco 2005), *rev'd on other grounds*, 216 S.W.3d 799 (Tex. 2007).

The policy terms define the right of the owner to change beneficiaries. *See Martinez*, 216 S.W.3d at 802-3 (citing Acts of 1953, 53rd Leg., R.S., ch. 113, 1953 Tex. Gen. Laws 400 (current version at TEX.INS.CODE ANN. § 1103.055 (West 2009))(subchapter B of chapter 1103, governing designation of beneficiary of life policy). On "substantial compliance" with the requirements stated in the policy for beneficiary changes, the insurer must honor the request and effect the change. *See Stewart v. Mut. Ben. Life Ins. Co.*, 522 S.W.2d 257, 260 (Tex.Civ.App.--Amarillo 1975, writ ref'd n.r.e.)(rejecting contention that a "satisfactory" request created express condition that insurer must consent to request). In determining the question of substantial compliance there can be no hard and fast rule, but each case must be decided on its own set of facts as to what was done or caused to be done by the insured. *Porter v. Garner*, 386 S.W.2d 618, 620 (Tex.Civ.App.--El Paso 1965, writ ref'd n.r.e.).

Pruco's argument is similar to the argument raised in *Todd v. Mutual Benefit Life Ins. Co.*, 483 S.W.2d 889 (Tex.Civ.App.--Waco 1972, writ ref'd n.r.e.). In *Todd*, the insured had a life policy naming his wife as a beneficiary. The insured changed his beneficiary designation and sent the completed form (on the insurer's required form) to the insurer. *Id.* at 890. The insurer

10

received the form the day before the insured died, but rejected the form as "unacceptable" because the form failed to indicate who might receive the share of a predeceased beneficiary. At the time the insured died, all the primary beneficiaries named on his COB form were living. *Todd*, 483 S.W.2d at 890. The court of appeals rejected the insurer's argument the failure to designate a contingent beneficiary allowed them to reject the COB, noting "[t]he rejection of the form was simply based on some company policy or rule which was moot and had no application to the insured Mr. Todd's case." *Id.* at 892. The insurer's argument was deemed "groundless" because when the insured died, both of the primary beneficiaries indicated on the COB request were alive and survived him. *Id.*

In *Martinez*, much like the case at hand, the court was presented with competing claims to the proceeds of a life insurance policy, the terms of which required that a COB request be written "in a form acceptable" to the insurer. *Martinez*, 216 S.W.3d at 802-03. The insured executed a COB request from his ex-wife to his current wife twenty-four days before he died. He also used the insurer's "own printed form" to make the change. After the COB was received by the insurer, they had "concerns" that it would violate the insured's divorce decree. So, as a result, the insurer did not accept the COB request. The Texas Supreme Court found that the COB request, even if it might violate the divorce decree, did not render the request "unacceptable." *See id*.

Pruco seeks to distinguish *Martinez* arguing the use of its *form* was not at issue, however, neither was it in *Martinez*. Dr. Garcia, like the insured in *Martinez*, used the COB form provided by his insurer. The *Martinez* insurer rejected the COB form based on the possibility the insured's request violated his divorce decree. Here, Pruco failed to record the COB based on the content of the request, that is, Dr. Garcia's contingent beneficiary designation in the *additional/special*

11

*beneficiary* section.   Pruco argues the COB was unacceptable to them because Mehrotra found the contingent beneficiaries percentages as designated by Dr. Garcia ambiguous.   However, it is undisputed, Sagarnaga survived her husband, thereby rendering the question of ambiguity of the *additional/special beneficiary* designation moot.

Pruco argues the Policy requires a COB form must be "in a form that meets our needs," and that one of Pruco's "needs" is the beneficiary designation be clear as to who the beneficiaries are. At trial, Pruco acknowledged the primary beneficiary designation was "quite clear," but Pruco refused to record the COB in its entirety.   Even in its brief, Pruco acknowledges that "no one disputed that" Dr. Garcia's *primary* beneficiary designation "was clear."

Pruco asserts that "in a form that meets our needs" authorizes an insurer to substantively review the contents of the COB form.   According to Pruco, after their review, they may reject the COB form in its entirety, even if only a part of it is objectionable, as it was here.   This argument precipitously leaves the definition of "meets our needs" completely in Pruco's discretion, and belies their assurance to the policy owners that beneficiary changes will be recorded, filed and given effect the date they are executed.   Pruco's concern about the *additional/special beneficiary* designation as a basis for their failure to record Dr. Garcia's COB request, especially in light of the clarity of the primary beneficiary designation is without merit.

The Court in *Martinez* notes that even if the insurer is correct regarding concerns that a COB request may violate a divorce decree, "the policy still said that a change would take effect when a request was *signed*, not when it was *accepted*." [Emphasis in original].   *Id.* at 803. Pruco's Policy with Dr. Garcia provided, "[i]f we receive your request . . . we will file and record the change and it will take effect as of the date you signed the request."   Pruco's Policy language

12

is essentially equivalent to the *Martinez* policy language,[10] and we find no reason not to adopt the same rationale as the *Martinez* Court.

Like Pruco, the insurer in *Martinez,* also raised the issue of standing of the designee of the insured's rejected COB request.   Pruco argues Sagarnaga has no standing because they rejected the COB request of Dr. Garcia.   However, like *Martinez,* if the COB request is valid and the insured substantially complied, Sagarnaga is a beneficiary whose right's vested when her husband died.

Pruco contends that *Harris* serves to resolve the standing argument.   The policy at issue in *Harris* contained a similar provision to that construed in *Martinez* and required that "any change [of beneficiary] must be in a written form satisfactory to [Nationwide]."   *See Harris*, 245 S.W.3d at 483; *Martinez*, 216 S.W.3d at 801.   However, in contrast to the policy in *Martinez*, the *Harris* policy required that any change be "recorded" at the insurer's home office.   More importantly, the original beneficiary in *Harris* was designated an "irrevocable" beneficiary.   *Harris*, 245 S.W.3d at 483.   The insurer in *Harris* rejected an initial COB request of the "irrevocable" beneficiary, but later accepted the COB where the sole "irrevocable beneficiary" signed the COB form, thereby consenting to the change.   *Id.* at 485.   We find the facts in *Harris* distinguishable from the facts in this case.

Dr. Garcia contacted Pruco and advised them he wished to change his beneficiary designations.   Pruco sent him a partially completed COB form.   Dr. Garcia completed the

---

[10] The policy stated:

> **Change of Beneficiary Designation:** You may make a change while the Insured is alive by sending us a request.   The change will take effect the date the request is signed, but the change will not affect any action we have taken before we receive the request.   We have the right to request your policy to make the change on it.

*Martinez*, 216 S.W.3d at 802, n.11.

13

remaining information and returned the COB request to Pruco. It is undisputed Dr. Garcia's primary beneficiary designation was clear and unambiguous. Pruco's argument that the failure to record the COB request in its' entirety is justifiable because they found the contingency designation unclear is without merit. This is particularly true, in light of the fact that at Dr. Garcia's death, all the primary beneficiaries listed were living, rendering the *"additional/special beneficiary"* language inapplicable. We find that Dr. Garcia met the substantial compliance test and had "done all that he could reasonably have done" to effect the change." *Tips v. Security Life & Accident Company*, 144 Tex. 461, 464, 191 S.W.2d 470, 471 (1945). Therefore, the COB became effective as of the date Dr. Garcia signed the COB form, April 3, 2008, and Sagarnaga became an intended beneficiary of the policy. On Dr. Garcia's death, Sagarnaga's interest in the Policy vested, and she obtained standing to proceed against Pruco for a breach of contract. *Harris*, 245 S.W.3d at 481. Pruco's first issue is overruled.

## Breach of Contract

Pruco contends the trial court erroneously found it breached the contract of insurance.[11] The construction of a contract is a question of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Edwards v. Lone Star Gas Co., a Div. of Enserch Corp.*, 782 S.W.2d 840, 841 (Tex. 1990). The general rules of contract construction govern insurance policy interpretation. *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex. 1999); *State Farm Life Ins. Co. v.*

---

[11] Pruco also argues that because it timely interpleaded the disputed Policy funds into the court's registry, no cause of action for breach of contract exists, contending that interpleader is meant to take the place of payment when an insurer is presented with competing claims, and citing TEX.INS.CODE ANN. § 542.058(c) in support. However, this argument fails to take into account Section 542.061: "[t]he remedies provided by this subchapter are in addition to any other remedy or procedure provided by law or at common law." Sagarnaga's claims, separate from the alleged violation of the Prompt Payment Statute, are not affected by Pruco's interpleader under the statute. *See Clayton v. MONY Life Insurance Company of America*, 284 S.W.3d 398, 404-05 (Tex.App.--Beaumont 2009, no pet.)(noting that "interpleader tender did not serve to discharge all liability claims which arose prior to the interpleader . . . [t]hose disputed independent claims must be adjudicated by summary judgment motion or trial.").

*Beaston*, 907 S.W.2d 430, 433 (Tex. 1995); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987); *see also Markel Ins. Co. v. Muzyka*, 293 S.W.3d 380, 385–86 (Tex.App.--Fort Worth 2009, no pet.)(describing various principles of contract interpretation that apply to insurance policies).

"The elements of a breach of contract claim are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff." *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 825 (Tex.App.--Fort Worth 2008, no pet.), *citing Harris v. Am. Prot. Ins. Co.*, 158 S.W.3d 614, 622–23 (Tex.App.--Fort Worth 2005, no pet.).

The facts regarding the breach are straightforward. The Policy is a contract. Dr. Garcia substantially complied with the COB requirements, Sagarnaga became vested on Dr. Garcia's death, and 50 percent of the Policy proceeds were to be paid to Sagarnaga. Pruco failed to tender the 50 percent policy death benefit to Sagarnaga. The trial court found Sagarnaga incurred damages as a result of Pruco's failure to pay the Policy benefits, specifically, having to pay the children $90,000 from Sagarnaga's 50 percent of the Policy death benefits that had been deposited in the court's registry. The elements of a breach of contract are met in the instant case and we overrule Pruco's second issue.

### Texas' Prompt Pay Statute

Pruco's fifth issue and part of their third complaint both involve Chapter 542 of the Texas Insurance Code, known as the Prompt Pay Statute. Pruco asserts the evidence is legally and factually insufficient to support the finding that Pruco violated the TEX.INS.CODE ANN. §§ 542.051 – 542.061. In addition, the court erred in awarding Sagarnaga statutory penalty interest pursuant

to TEX.INS.CODE ANN. § 542.060 (West 2009). We disagree.

Section 542.055 provides than an insurer, within 15 days of receipt of a claim, is to acknowledge receipt, commence investigation and request "all items, statements, and forms that the insurer reasonably believes, at that time, will be required from the claimant." TEX.INS.CODE ANN. § 542.055(a). The statute provides that a "notice of claim" is defined as any written notification by a claimant to an insurer. TEX.INS.CODE ANN. § 542.051(4). If the insurer denies the claim, such denial must be "not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer . . . ." TEX.INS.CODE ANN. § 542.056(a). Subsection (a) of Section 542.058 states if an insurer "after receiving all items, statements, and forms reasonably requested" under Section 542.055 delays payment of the claim for more than 60 days (or that period another applicable statute specifies), the insurer shall pay "damages and other items" in accordance with Section 542.060. TEX.INS.CODE ANN. § 542.058(a).

If an insurer is liable for a claim that is not in compliance with the Prompt Payment subchapter, the insurer is liable for interest on the claim of 18 percent a year as damages, and reasonable attorney fees. TEX.INS.CODE ANN. §542.060(a). In June of 2009, the following provision was added to Section 542.058:

> (c) A life insurer that receives notice of an adverse, bona fide claim to all or part of the proceeds of the policy before the applicable payment deadline under Subsection (a) shall pay the claim or properly file an interpleader action and tender the benefits into the registry of the court not later than the 90th day after the date the insurer receives all items, statements, and forms reasonably requested and required under Section 542.055. A life insurer that delays payment of the claim or the filing of an interpleader and tender of policy proceeds for more than 90 days shall pay damages and other items as provided by Section 542.060 until the claim is paid or an interpleader is properly filed.

16

TEX.INS.CODE ANN. § 542.058(c).[12]

Additionally, Section 542.061 provides: "[t]he remedies provided by this subchapter are in addition to any other remedy or procedure provided by law or at common law."

Dr. Garcia died on September 22, 2009. The children each filed a claim for benefits under the Policy by October 15, 2009. On October 21, 2009, Sagarnaga called Pruco to assert her claim to the death benefit. She also sent a letter that day reiterating her position that Dr. Garcia signed a COB making her a 50 percent beneficiary. Subsequently, Pruco receives Sagarnaga's letter regarding her claim. Pruco referred the file to its claims department for handling as an adverse claims case on October 27. On November 3, Pruco sends a letter to Sagarnaga rejecting her claim, stating the children are the only beneficiaries. On November 13, Pruco sent a letter to Sagarnaga requesting her to submit documents verifying Dr. Garcia's intent regarding the change of beneficiary.

On December 17, the children filed their original petition against Pruco for the entire benefit under the Policy. On January 8, 2010, Pruco answered the children's suit, counterclaimed, and included "a third party action in interpleader against Sagarnaga seeking to deposit the Death Benefit" with the court. On March 9, Pruco filed a "Motion to Interplead Funds and Dismiss," arguing that Pruco is "ready, willing and able to pay the Death Benefit" and was requesting the "Court's permission to deposit the Death Benefit with the Court." Pruco was also seeking, after the death benefit was paid, that Pruco "shall be fully and completely discharged of any and all liabilities to the claimants . . . ." On May 7, the court signed an order in which Pruco's motion to dismiss was denied, but ordered the $375,000, plus interest payable pursuant to the

---

[12] Amended by Acts 2009, 81st Leg., ch. 833, § 1, eff. June 19, 2009. This subsection was in effect prior to Dr. Garcia's death in September of 2009.

Policy, to be deposited immediately into the registry of the court. On August 3, the court signed an agreed order which reflected that Pruco had deposited $382,483.50 into the court's registry on June 3.

The trial court, in her conclusions of law, held Sagarnaga was entitled to $135,000 of statutory interest for the violation of Chapter 542, commencing on November 3, 2009, and "[t]he Company is liable to Sagarnaga for wrongfully delaying payment to Sagarnaga for more than 60 days after receiving notice of the Sagarnaga claim." On January 25, 2012, the court signed an amended judgment awarding Sagarnaga "statutory interest damages . . . on the Claim Amount as calculated at the rate of 18% per year commencing on November 3, 2009, and ending on the day preceding the date of judgment was rendered."

Notice of claim is written notification by the claimant to the insurer, and it is undisputed Pruco received written notice from Sagarnaga. TEX.INS.CODE ANN. § 542.051(4). On November 3, Pruco sent written notice to Sagarnaga rejecting her claim, which complied with TEX.INS.CODE ANN. § 542.056(a). The interpleader was filed on January 8, but the tender of the death benefits into the registry of the court was not accomplished until June 3, 2010.

Pruco argues that the evidence is legally and factually insufficient to support the court's finding that Pruco violated the Section 542.058. First, Pruco agues they required additional time to conduct an investigation into Dr. Garcia's death, thus the Section 542.058 deadlines were not triggered until after November 2009. Second, Pruco was presented with "adverse, bonafide" claims, so Section 542.058(c) ninety-day deadline applies. Finally, Pruco's interpleader was filed prior to the expiration of ninety days, so therefore, they did not violate the Prompt Pay statute. In support of their claim the interpleader was filed timely, Pruco points to the express language of

18

Section 542.058(c) and the holding in *Martinez.*

In *Martinez*, the trial court assessed the statutory penalty interest after the interpleader was filed and until the final judgment was signed, some nine months later. *Martinez,* 216 S.W.3d at 805. The Texas Supreme Court held, "only the absence of rival claims" would justify continuing the statutory penalty of Section 542.060(a) after interpleader occurs. *Id.* at 807. Pruco urges this Court to construe *Martinez* for the proposition that "interpleader sufficed in place of payment." *Id.* at 806. However, in *Martinez,* the policy proceeds were deposited into the trial court's registry on the same day the interpleader was filed. *Id.* at 801. In fact, the interpleader was filed and the policy proceeds were deposited seventy-two days from the prompt payment sixty-day deadline, thereby exceeding it only by twelve days. *Id.* at 807. The court held the insurer owed the statutory penalties only for the twelve days it had missed the Section 542.058 deadline. *Id.* at 807-08.

The *Martinez* court repeatedly emphasized the payment of the proceeds into the court's registry tolls the statute's interest penalties. A careful reading of *Martinez* reveals the Court used "interpleader" and "deposit of the proceeds" interchangeably, and understood those actions would occur nearly simultaneously. *Id.* at 806, 807. The court stated, "the statute seeks to get policies paid as quickly as possible, it is not advanced by paying the wrong party, a consequence that interpleader avoids." *Id.* at 806. Further, "an insurer that tenders part of the policy proceeds must pay penalties only on the remainder . . . ." *Id.* at 807. The court reasoned that "an insurer that interpleads the entire policy proceeds owes nothing more, and should not have to pay penalties on the presumption that it does." *Martinez,* 216 S.W.3d at 807.

Pruco correctly points out *Martinez* was decided in 2007, prior to the enactment of Section

19

542.058(c). Turning to the express language of the statute, firstly, we note that it states "file an interpleader action and tender the benefits into the registry of the court . . . ." Secondly, it also states, that "[a] life insurer that delays payment of the claim or the filing of an interpleader and tender of policy proceeds," if greater than ninety days, is subject to the statutory interest penalty of Section 542.060(a). It is clear to us that the Legislature has intentionally coupled the filing of the interpleader action and the deposit of the policy proceeds into the court's registry in order to toll the assessment of the statutory interest under Section 542.060(a).

Therefore, we hold that the statutory interest, pursuant to Section 542.060(a), shall begin the day after the deadline ends under Section 542.058(a) or (c), that being either day sixty-one or day ninety-one. The interest penalty, in accordance with *Martinez*, shall accrue until the day before the policy proceeds have been deposited into the court's registry. In the case at hand, the tender of the Policy proceeds into the court's registry occurred on June 3, 2010. Therefore, the court erred in assessing the statutory interest until January 24, 2012.

Next, we turn to the sufficiency of the court's findings of fact and conclusions of law that (1) Pruco had an obligation to pay Sagarnaga within sixty days under Section 542.058(a); and (2) that obligation began on November 3, 2009. The court found Sagarnaga was a beneficiary and it is incontrovertible that Sagarnaga was not paid the Policy benefits within sixty days of her claim. Pruco asserts they may delay payment up to ninety days under Section 542.058(c) if they have received "notice of an adverse, bona fide claim . . . ." However, in order to avail themselves of the payment delay of ninety days, Pruco shoulders the burden of proof in showing that Sagarnaga and the children had adverse, bona fide claims to the Policy. However, here the record is woefully devoid of evidence that Sagarnaga and the children were bona-fide adverse claimants. Pruco has

20

failed to show they are entitled to the extra thirty days Section 542.058(c) affords them, and the evidence is legally and factually sufficient to support the court's finding Pruco violated Section 542.058(a).

On October 21, Pruco first became aware of Sagarnaga's claim. Pruco then received written notice of her claim. On November 3, 2009, Pruco rejected Sagarnaga's claim asserting the sole beneficiaries to the Policy were the children. Then in a seeming about-face, on November 13, Pruco requests Sagarnaga provide further documentation to support her claim. Pruco points to their November 13 letter to show that they were continuing to evaluate Sagarnaga's claim through November 2009 and therefore is not liable to pay the death benefit on November 3, 2009. As Pruco was able to deny Sagarnaga's claim on November 3, ostensibly, they had concluded their investigation as to whether benefits were payable and to whom. We find that the evidence is legally and factually sufficient to support the court's conclusion that Pruco delayed payment for over sixty days beginning on November 3, 2009.

The interpleader and the deposit of policy proceeds should have occurred by January 2, 2010, under Section 542.058(a) in order to avoid the statutory penalties. The death benefits owed to Sagarnaga were deposited into the court's registry by Pruco on June 3, 2010. The imposition of the statutory interest in accordance with Section 542.060(a) should begin the sixty-first day after November 3, 2009 and end the day before June 3, 2010. In accordance with our opinion, the statutory interest would commence on January 3, 2010 and end on June 2, 2010. Under our holding and these facts, Pruco violated both Section 542.058(a), in that their tender of the policy proceeds into the court's registry exceeded the sixty days deadline.

We overrule Pruco's fifth issue and part of their third issue as to Chapter 542 and the

imposition of the 18 percent statutory interest under Section 542.060(a).

## Attorney's fees

In its sixth issue, Pruco contends the evidence supporting the award of Sagarnaga's attorney's fees is legally and factually insufficient. Pruco points to the failure of the testifying attorney to segregate the attorneys' fees accrued under the breach of contract claim and of those fees that accrued under Sagarnaga's other claims.

Whether segregation is necessary is a question of law, subject to de novo review. *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 374 (Tex.App.--El Paso 2010, no pet.). Texas law prohibits recovery of attorneys' fees unless authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex. 2006). A negligence cause of action does not support a claim of attorney's fees, whereas a claim for breach of contract does. *See* TEX.CIV.PRAC.&REM.CODE ANN. §§ 38.001–.006 (West 2008).

If any attorney's fees relate solely to claims for which fees are not recoverable, a claimant must segregate recoverable from unrecoverable fees. *Tony Gullo Motors*, 212 S.W.3d at 313. Intertwined facts do not make tort fees recoverable. *Id*. at 313. It is only when legal services advance both recoverable and unrecoverable claims and the services are so intertwined that the associated fees need not be segregated. *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007), *citing Tony Gullo Motors*, 212 S.W.3d at 313–14. Unsegregated fees are some evidence of what the segregated amount should be, therefore, remand for segregation of fees may be required when at least some of the fees at issue are attributable to claims for which attorney's fees are recoverable. *Id.*

In the instant case, Sagarnaga's claims and counterclaims involved breach of contract,

violation of the Prompt Payment Statute, common-law and statutory bad faith, negligence and Texas Insurance Code violations. The judgment awarded Sagarnaga $200,000 in attorney's fees.

When Sagarnaga's counsel, Pierce, testified to his attorney's fees, he stated:

> The only other point I wish to make is that I have not attempted to segregate fees in this case, because there are essentially to some degree three lawsuits that were being litigated: Ms. Sagarnaga versus the children, Ms. Sagarnaga versus Mr. Schmid and Ms. Sagarnaga versus Prudential. However, the facts of one and the facts of all are the same.

Pierce further testified:

> It is my opinion that it's not really possible to tease out any particular part of any claim or cause of action, because the facts of the three cases are so interrelated that it was all going to be generated whether or not there was a claim against Mr. Schmid directly or it was just against Prudential.

While Pierce referred to an "affidavit" relating to his fees, the exhibit introduced at trial was the billing records. Even a cursory review of the billing records indicates billing entries relating to Schmid − who Sagarnaga raised negligence allegations against in her claims. Pierce made no effort to estimate a possible segregation of fees in his testimony. While the standard does not mandate the maintenance of separate time records when drafting the different claims, an opinion would be sufficient as to the percentages of segregation as to the claims. *See Tony Gullo Motors*, 212 S.W.3d at 314 n.83.

In *Allan v. Nersesova*, Allan pleaded thirteen claims against five defendants. 307 S.W.3d 564, 573 (Tex.App.--Dallas 2010, no pet.). At trial, Allan asserted only one cause of action against one defendant for which attorney's fees could be awarded. *Id*. Allan argued that she had no burden to segregate her fees because the tort and contract claims required proof of the same set of facts and circumstances and were intertwined to the point of being inseparable. The court of appeals noted that Allan failed to show that all her attorney's fees were incurred for legal services

involving the breach of contract action. *Allan*, 307 S.W.3d at 573. "For example, the fees incurred in drafting the original and amended petitions and the jury charge relating to the tort claims were not recoverable, while the portion of the fees relating to the contract claim was recoverable." *Id*. Based on these findings, the court of appeals reversed the attorney's fee award and remanded the case for a new trial on the issue of attorney's fees. *Id*. at 573–74.

We find the reasoning of *Tony Gullo Motors* and *Allan* appropriate in the instant case, particularly with the lack of opinion regarding segregation of fees and the evidence presented which included fees for claims where attorney's fees would have been unrecoverable.

We sustain Pruco's sixth issue. TEX.R.APP.P. 43.3; *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Systems, Inc.*, 245 S.W.3d 488, 510 (Tex.App.--Houston [14th Dist.] 2007, pet. denied)(ordering same relief where attorney fees were not segregated).

## Standing and Violation of Chapter 541

At oral argument the parties agreed that common law and statutory bad faith claims were no longer at issue. Therefore, we do not address that part of Pruco's third issue as it relates to Chapter 541 and common-law bad faith, as it is not necessary to the disposition of the appeal. TEX.R.APP.P. 47.1.

## Expert Witness

Because we have concluded the evidence is sufficient to support the judgment without Sagarnaga's expert testimony, we do not address Pruco's fourth issue as it is not necessary to the disposition of the appeal. TEX.R.APP.P. 47.1.

## CROSS-APPEAL

Sagarnaga has cross-appealed, asserting in a single issue the trial court abused its

discretion by failing to award Sagarnaga post-trial and appellate attorney's fees in its judgment.

An award of attorney's fees under Section 38.001 is mandatory. TEX.CIV.PRAC.&REM.CODE ANN. § 38.001 (West 2008); *Gunter v. Bailey*, 808 S.W.2d 163, 165-66 (Tex.App.--El Paso 1991, no writ)(holding that an award of reasonable attorney's fees to a plaintiff recovering on a valid claim founded on a written or oral contract is mandatory, and that it follows that if the party is entitled to attorney's fees under Section 38.001, he is also entitled to attorney's fees on appeal); *Lee v. Perez*, 120 S.W.3d 463, 469 (Tex.App.--Houston [14th Dist.] 2003, no pet.). Sagarnaga presented uncontested testimony that $30,000 is a reasonable fee for an appeal to this Court, with additional fees for a motion to reconsider, and $5,000 for an appeal to the Texas Supreme Court, increasing if the Supreme Court required briefing and granted oral argument. "While the trial court had discretion to award a smaller or larger fee, it did not have discretion to award nothing." *Id*. Sagarnaga was entitled to an award of appellate attorney's fees. *See id*. at 469-70. However, because Pruco has partially succeeded in this appeal, and as the matter is being remanded based on the failure to segregate the attorney's fees, we have no choice but to reverse and remand the award of attorney's fees to the trial court for a determination of the reasonable attorney fees to be awarded Sagarnaga in view of the fact that Pruco was partially successful in this appeal, and to make a determination of an appellate attorney fee should the matter be appealed to the Texas Supreme Court. *See Parker v. Parker*, 897 S.W.2d 918, 935 (Tex.App.--Fort Worth 1995, writ denied)(reversing and remanding appellate attorney fee award for redetermination where appeal was partially successful); *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex.App.--Dallas 1988, writ denied)(same). Sagarnaga's issue is overruled to the extent that the entire attorney's fee award is being reversed and remanded for such redetermination.

25

## CONCLUSION

We reform the trial court's judgment to reflect the award of 18 percent statutory penalty interest under Chapter 542 of the Insurance Code is to begin on January 3, 2010 and end June 2, 2010. We reverse that portion of the judgment as it relates to the attorney's fees and remand to the trial court for a determination of Sagarnaga's recoverable attorney's fees, including appellate attorney fees, in a manner consistent with this opinion. We affirm the remainder of the trial court's judgment.

August 29, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

26